KLEES, Judge.
Plaintiff, Bank of Louisiana in New Orleans, instituted this action against defendants, Mrs. Gayle Duclaux, individually, and Lazybug Shops, Inc., to recover damages for an alleged breach of contract. Defendants reconvened, arguing that plaintiff had breached the contract in question. The matter was tried before a commissioner, who held in favor of the defendants. The plaintiff excepted to the commissioner’s finding in the lower court. The trial court *301 affirmed the commissioner’s ruling. Plaintiff, Bank of Louisiana, now appeals.
On October 6, 1978, plaintiff, Bank of Louisiana (BOL), and defendants, Mrs. Du-claux and Lazybug Shops, Inc. (Lazybug), entered into a contract, entitled “assignment of accounts receivable.” Under the contract, defendant, Lazybug, assigned to plaintiff, BOL, all of its accounts receivable previously handled by General Electric Credit Corp., and all future sales on these accounts as well as all new accounts created. Plaintiff was to handle the collection of the accounts receivable. The contract provided that certain uncollectible accounts could be charged back to defendants through a reserve account or its checking account. It is these provisions concerning BOL’s ability to charge back deliquent accounts which are at the heart of this litigation.
The assignment of accounts receivable is divided into two parts. Part I handles the assignment of the accounts previously serviced by General Electric Credit Corp. Section D of Part I provides that
No sooner than 120 days nor later than 270 days from date hereof BOL may, at its discretion reassign to the undersigned [Lazybug] any uncollected balance of any assigned account, in which event the undersigned becomes indebited unto BOL for said amount. To satisfy this indebtedness, BOL may, at its discretion, either debit the undersigned’s reserve account or its checking account. If such debit would result in an overdraft, the undersigned, on demand, will pay BOL sufficient funds to cover such overdrafts.
Part II of the contract provides for the purchase by BOL of all sales on assigned accounts made, as well as new accounts created after the effective date of the agreement. Part II further states that Lazybug, and Mrs. Duclaux, as guarantor, will be “responsible for delinquencies and bad debts and any account on which a payment has not been made in six consecutive months.” Such accounts “shall automatically be charged back to the undersigned. In order to accommodate charge backs, a reserve shall be established which reserve shall not exceed the dollar amount of accounts which are 90 days past due.”
Plaintiff asserts that the defendant breached the contract in not maintaining the reserve account as required. Defendant argues that the reserve was maintained as required and that plaintiff, BOL, breached the contract in charging back accounts which they had no right to charge back. Both parties’ arguments center on the two provisions concerning charge backs.
BOL argues that paragraph (G) of Part II applies to all accounts, thus allowing plaintiff to charge back any account which is six months delinquent. Lazybug contends that paragraph (G) of Part II applies only to new accounts created, and sales made on old accounts after the effective date of the contract. Lazybug further contends that the charge back of previously existing accounts was governed by paragraph D of Part I, which allows BOL to charge back such accounts from 120-270 days after the effective date of the contract.
The commissioner found that the two provisions cited were in conflict, and in accordance with the law, applied the most restrictive provisions of the contract. The commissioner held that BOL had the right to charge back accounts within 120-270 days of October 6, 1978, the effective date of the contract. The plaintiff had no right to charge back any accounts to the reserve after this 270 day period. Any attempt to charge back accounts after the time period has lapsed would be considered as a breach of contract on the part of plaintiff. The trial court accepted the commissioner’s findings as its own.
On appeal, plaintiff argues that the trial court committed reversible error in the interpretation and application of the contract. We agree with the plaintiff that a conflict does not exist between the two provisions in question.
The assignment of accounts receivable was clearly divided into two sections each of which specifically indicated that the accounts were sold or assigned “with re *302 course”. Part I handled the accounts which had been created prior to the effective date of the contract. Section D of Part I governs the ability of BOL to charge back these assigned accounts. Under this section BOL had the complete discretion to reassign any account back to defendant during the period of 120-270 days after the effective date of the contract. However, no language in Section I changes the “with recourse” provision of the opening paragraph to a “without recourse” provision. That is, the agreement does not provide for a forfeiture of BOL’s recourse rights under any circumstances, and, absent such language, we find that the old accounts described in Section I never lost their designation of being assigned “with recourse”.
Part II of the contract is concerned primarily with new sales on the assigned accounts, and new accounts created after the effective date of the contract. Part II (G) provides charge backs for “delinquencies and bad debts and any account on which payment has not been made within six consecutive months.” (our emphasis). The interpretation of this clause is the crux of this controversy. We interpret this language to apply to all accounts, original and new, which become delinquent or are bad debts or on which payment has not been made within six consecutive months, including old accounts that BOL did not choose to reassign within the 270 day period. We arrive at this conclusion because it is obvious that the tenor of the entire agreement was conditioned upon a “with recourse” relationship between BOL and the defendants, and nowhere in the entire agreement, does any wording even infer that defendants were to be released from their recourse liability. The ruling of the trial court that the recourse rights of BOL were lost if not exercised within the 270 day period is in error. To so hold would give BOL lesser recourse rights on the old accounts than it held on the new ones, and its option to reassign the old accounts within 270 days would be converted into a penalty of forfeiture of its recourse rights.
Therefore, we conclude that plaintiff, BOL, had the right to charge back any assigned account within 120 to 270 days after the effective date of the contract, as provided in Part I (D). Further, BOL was authorized to charge back any accounts on which no payment had been made in six months, pursuant to Part II (G), including sales on assigned accounts made, and new accounts created, after the effective date of the contract, October 6, 1978.
Defendants admit in their brief and our examination of the record confirms that plaintiff proved the existence of bad accounts totaling $6,570.78, all of which were part of the original accounts acquired from G.E.C.C., and for which plaintiff is entitled to a judgment.
Accordingly, the judgment of the trial court is reversed insofar as it dismissed plaintiffs demand, and insofar as it granted judgment in favor of plaintiff in recon-vention, Lazy Bug Shops, Inc. and against the Bank of Louisiana in the sum of $4,535.86.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, the Bank of Louisiana, and against the defendants, Lazy Bug Shops, Inc. and Mr. Gayle K. Duclaux, jointly and in solido, in the full sum of $6,570.78, together with legal interest from date of judicial demand.
It is further ordered, adjudged and decreed that the judgment of the trial court dismissing all other demands is affirmed.
REVERSED IN PART, AMENDED, AND AS AMENDED, AFFIRMED.